# EXHIBIT E

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

April 25 2019 4:06 PM

KEVIN STOCK
COUNTY CLERK
NO: 19-2-07409-0

1

2

3

4

5                    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

6                         IN AND FOR THE COUNTY OF PIERCE

7

8

9  THE BANK OF NEW YORK MELLON F/K/A
   THE BANK OF NEW YORK AS TRUSTEE FOR        Cause No.
10 FIRST HORIZON ALTERNATIVE MORTGAGE
   SECURITIES TRUST 2006-AA6

11                    Plaintiff,                COMPLAINT FOR:
                                                 1) DEED OF TRUST FORECLOSURE
12                                               2) QUANTUM MERUIT / UNJUST
                                                    ENRICHMENT
13

14           vs.

15 DEBORAH TOWNSEND; SCOTT TOWNSEND;
   MORTGAGE ELECTRONIC REGISTRATION
16 SYSTEMS, INC.; FIRST HORIZON HOME
   LOAN CORPORATION; JOHN AND/OR JANE          1) Waiver of Deficiency
   DOE, UNKNOWN OCCUPANTS/CO-                   2) Eight (8) Month Right of Redemption
17 HABITANTS OF THE SUBJECT PREMISES

18

19                    Defendant(s).

20
                                  1.
21

22     Plaintiff, THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK as

23 Trustee for FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TRUST 2006-

24 AA6, by and through its attorneys of record, the law firm Shapiro & Sutherland, LLC, files this

25                                    *SHAPIRO & SUTHERLAND, LLC*
                              1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
26                                 Telephone (360)260-2253(800)970-5647
                                          Fax (360)260-2285
27                                     ksutherland@logs.com

   1-COMPLAINT FOR DEED OF TRUST FORECLOSURE
28 S&S No: 19-124735

Complaint for Deed of Trust Foreclosure on the property located at 1221 14th Avenue, Fox Island, WA 98333. In no event should this proceeding be construed as an attempt to establish personal liability for any persons whose debt has been extinguished in bankruptcy or by an In Rem order granting relief from stay.

## I. VENUE AND JURISDICTION

2.

This Court has jurisdiction over the subject matter of this action pursuant to RCW 2.08.010. Venue is proper in Pierce County pursuant to RCW 4.12.010(1) because this is an action to foreclose a deed of trust on real property located in Pierce County; and pursuant to RCW 4.12.025(1) because at least one of the defendants resided in Pierce County at the commencement of the action.

## II. PROPERTY

3.

The real property that is subject to above-entitled action is legally described as follows:

> BEGINNING AT THE NORTHWEST CORNER OF LOT 1, PIERCE COUNTY SHORT PLAT NUMBER 200005195001, ACCORDING TO THE PLAT THEREOF RECORDED MAY 19, 2000, RECORDS OF PIERCE COUNTY AUDITOR. THENCE SOUTH 89°32'34" EAST 513.86 FEET; THENCE SOUTH 00°51'39" WEST 149.23 FEET; THENCE NORTH 87°47'16" EAST 239.06 FEET; THENCE SOUTH 80°26'07" EAST 387.61 FEET; THENCE SOUTH 82°55'58" EAST 201.36 FEET TO THE EAST LINE OF SAID SHORT PLAT; THENCE SOUTH ALONG THE EAST LINE OF SAID SHORT PLAT 02°25'22" WEST 107.43 FEET; THENCE NORTH 89°32'34" WEST 1333.00 FEET TO THE WEST LINE OF SAID SHORT PLAT; THENCE NORTH ALONG THE

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253(800)970-5647
Fax (360)260-2285
ksutherland@logs.com

2-COMPLAINT FOR DEED OF TRUST FORECLOSURE
S&S No: 19-124735

WEST LINE OF SAID SHORT PLAT 00°51'39" EAST 330.00 FEET TO THE POINT OF BEGINNING. EXCEPT ANY PORTION THEREOF LYING WITHIN 14TH AVENUE. TOGETHER WITH SECOND CLASS TIDELANDS ABUTTING THEREON. SITUATE IN THE COUNTY OF PIERCE, STATE OF WASHINGTON.

TAX PARCEL ID#: 0220078005

and is more commonly known as 1221 14th Avenue, Fox Island, WA 98333 (the "Property").

## III. PARTIES

4.

PLAINTIFF'S STATUS: THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK as Trustee for FIRST HORIZON ALTERNATIVE MORTGAGE SECURITIES TRUST 2006-AA6, ("Plaintiff") is authorized to bring suit pursuant to RCW 23B.15.010.

5.

DEFENDANTS: The following Defendants claim or may claim some right, title or interest in the Property:

| Defendant | Type of Interest | Further Information |
|---|---|---|
| DEBORAH TOWNSEND A/K/A DEBORAH LYNN TOWNSEND | Grantor & Owner of Record | Deed of Trust recorded on September 6, 2006 as Instrument No. 200609060376, records of Pierce County, Washington. |
| SCOTT TOWNSEND A/K/A SCOTT WILLIAM TOWNSEND | Grantor & Owner of Record | Deed of Trust recorded on September 6, 2006 as Instrument No. 200609060376, records of Pierce County, Washington. |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. | Subordinate Mortgage/Deed of Trust | Recorded September 6, 2006 as 200609060377 records of Pierce County, Washington |

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253(800)970-5647
Fax (360)260-2285
ksutherland@logs.com

3-COMPLAINT FOR DEED OF TRUST FORECLOSURE
S&S No: 19-124735

| FIRST HORIZON HOME LOAN CORPORATION | Subordinate Mortgage/Deed of Trust | Recorded September 6, 2006 as 200609060377 records of Pierce County, Washington |
| JOHN AND/OR JANE DOE, Unknown Occupants/Co-Habitants of the Subject Premises | Unknown occupants, or other interest of record, other than named defendants | Plaintiff reserves the right to substitute the true name under ORCP 20H, if such party's true name is discovered |

6.

DEFENDANTS INTERESTS INFERIOR:  Any right, title or interest in the property claimed by any Defendant is subordinate and inferior to the interest of Plaintiff.

**IV. NON-MILITARY STATUS OF DEFENDANTS**

7.

Counsel for Plaintiff has inquired as to the military status of the Grantor/Grantors of the subject Deed of Trust to demonstrate compliance with the Service Member Civil Relief Act.  The information received from the United States Department of Defense Manpower Data Center evidences that the borrower(s) is/are not on active military duty.

///

///

///

///

///

///

///

///

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253(800)970-5647
Fax (360)260-2285
ksutherland@logs.com

4-COMPLAINT FOR DEED OF TRUST FORECLOSURE
S&S No: 19-124735

## V. STATEMENT OF FACTS

### 8.

EXECUTION OF PROMISSORY NOTE: For valuable consideration, on August 25, 2006, Deborah Townsend & Scott Townsend, Wife & Husband (the "Borrower") made, executed and delivered to Mortgage Electronic Registration Systems, Inc., acting solely as nominee for First Horizon Home Loan Corporation, its successors and assigns (the "Lender") a promissory note/loan agreement (the "Note") in the principal amount of $650,000.00. A true and accurate copy of the Note, as imaged in Plaintiff's records, is hereto attached as Exhibit 1 and incorporated hereby.

### 9.

EXECUTION OF THE DEED OF TRUST: In order to secure payment of said Note, Deborah Townsend & Scott Townsend, Wife & Husband, who had the right to convey the Property described above at the time of execution, executed and delivered to Mortgage Electronic Registration Systems, Inc., acting solely as nominee for First Horizon Home Loan Corporation, its successors and assigns (the "Lender") a written Deed of Trust. A true and accurate copy of the Deed of Trust, as recorded, is hereto attached as Exhibit 2, and incorporated hereby.

///

///

///

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253(800)970-5647
Fax (360)260-2285
ksutherland@logs.com

5-COMPLAINT FOR DEED OF TRUST FORECLOSURE
S&S No: 19-124735

10.

RECORDING OF THE DEED OF TRUST: The Deed of Trust was duly recorded on September 6, 2006, in the official records of Pierce County, Washington as Instrument No. 200609060376.

11.

CURRENT HOLDER OF PROMISSORY NOTE AND PRESENT BENEFICIARY UNDER THE DEED OF TRUST: Plaintiff is the current holder or the transferee with the rights of a holder of the Note and thus the present beneficiary under the Deed of Trust (together the "Loan") and has the right to foreclose.

**VI. CLAIM FOR RELIEF - JUDICIAL FORECLOSURE**

12.

ELECTION TO ACCELERATE: Borrower materially breached the terms of the Loan by failing to make payments when due.  Plaintiff gave written notice of the default and of its intent to accelerate the balance of the debt due under the Loan Deborah Townsend & Scott Townsend, Wife & Husband, failed to cure the default pursuant to the notice.  Because of the default, Plaintiff has exercised and does hereby exercise the option granted in the Loan documents to declare the whole of the balance of both the principal and interest thereon immediately due and payable.

///

///

///

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253(800)970-5647
Fax (360)260-2285
ksutherland@logs.com

6-COMPLAINT FOR DEED OF TRUST FORECLOSURE
S&S No: 19-124735

13.

AMOUNTS DUE: Plaintiff's records reflect that as of April 25, 2019, and under the terms of the Loan, there is now due and owing to Plaintiff the entire outstanding balance of the Loan as follows:

| Principal Balance | $650,000.00 |
|---|---|
| Accrued Interest through April 25, 2019: | $303,829.71 |

and late charges and other fees and costs recoverable under the Loan documents together with accruing prejudgment interest and escrow advances of $81,217.70, to date. Interest currently accrues at the rate of 7.625% per annum from April 25, 2019 to the date of entry of judgment, and post-judgment interest thereafter. Plaintiff is also entitled to accruing fees and disbursements incurred or advanced prior and throughout the pendency of this action as shown by declaration of counsel, if uncontested, or if contested as proven at trial.

14.

ATTORNEY FEES AND LITIGATION COSTS: The Loan documents provide in relevant part that Borrower will pay the holder of the Note and Deed of Trust the reasonable costs of enforcing the Loan, including reasonable attorney fees and court costs. Plaintiff is thus entitled to its reasonable attorney fees and costs incurred herein.

15.

NO OTHER SUITS OR ACTIONS: No other suit or action has been instituted or is now pending upon the Note or to foreclose the Deed of Trust.

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253(800)970-5647
Fax (360)260-2285
ksutherland@logs.com

7-COMPLAINT FOR DEED OF TRUST FORECLOSURE
S&S No: 19-124735

16.

NO DEFICIENCY: As set forth in the Deed of Trust, the Property is not used principally for agricultural or farming purposes.  Nevertheless, plaintiff herein expressly waives any right to a deficiency judgment.

17.

REDEMPTION PERIOD: The sheriff should be ordered to issue a sheriff's deed for the Property upon the expiration of the statutory redemption period.

18.

NO ADEQUATE REMEDY AT LAW: Plaintiff has no adequate remedy at law.

19.

PURCHASER AT SHERIFF'S SALE:  In the event of a foreclosure sale, the purchaser at sale is entitled to immediate possession of the Property.  Plaintiff is entitled to bid at the Sherriff's Sale.

## VII. CLAIM FOR RELIEF – QUANTUM MERUIT

### (Unjust Enrichment)

ESCROW ADVANCES: Defendants, Deborah Townsend and Scott Townsend, were the beneficiaries of Plaintiff's out-of-pocket advances for taxes and insurance in the amount of $81,217.70, to date. Wherefore said Defendants are liable / responsible for the obligations regarding taxes and insurance, but failed to pay as required, and to the extent Plaintiff advanced these sums on their behalf, said Defendants were unjustly enriched.

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253(800)970-5647
Fax (360)260-2285
ksutherland@logs.com

8-COMPLAINT FOR DEED OF TRUST FORECLOSURE
S&S No: 19-124735

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests a general judgment of foreclosure from this Court as follows:

20.

JUDGMENT ON THE PROMISSORY NOTE: That Plaintiff have money judgment declaring the amounts due under the Note together with prejudgment interest and fees and costs recoverable under the Loan documents including, but not limited to late fees, escrow advances, corporate advances, taxes, assessments, municipal charges advanced and other items which may constitute liens upon the Property, together with insurance and repairs, reasonable attorneys' fees and litigation costs, together with special overhead expenses and Plaintiff 's costs and disbursements herein as submitted by declaration of counsel, or in such other amounts as the Court shall deem reasonable.  The judgment for such amounts due shall accrue interest at the contract rate of interest, or at the legal rate of interest (12.000% per annum), whichever is greater.

21.

SUPERIORITY OF PLAINTIFF'S LIEN AND FORECLOSURE OF DEFENDANTS' RIGHTS: That Plaintiff's Deed of Trust be declared a valid first lien upon the Property and that by the foreclosure and sale, the rights of each of the Defendants and persons claiming by, through, or under them subsequent to the execution of the Deed of Trust, be adjudged inferior and subordinate to Plaintiff's lien and be forever foreclosed except for any statutory right of redemption allowed by law.

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253(800)970-5647
Fax (360)260-2285
ksutherland@logs.com

9-COMPLAINT FOR DEED OF TRUST FORECLOSURE
S&S No: 19-124735

22.

FORECLOSURE OF THE PROPERTY: That the Pierce County Sheriff be ordered to sell the Property in the manner prescribed by law. That the proceeds thereof be applied first toward the cost of sale, then toward satisfaction of the amounts declared due or awarded to Plaintiff's in this action, together with increased interest, fees, charges and such additional amounts as Plaintiff has advanced or may advance under the terms of the Loan for taxes, assessments, municipal charges, such other items as may constitute liens upon the Property, amounts advanced for necessary insurance and repairs, and interest thereon from the date of judgment. The surplus proceeds, if any, to be deposited with the court clerk to be disbursed to the party or parties who establish the right thereto.

23.

FORECLOSURE OF ALL OTHER INTERESTS/CLAIMS: That each and every Defendant and all persons claiming through or under each and every Defendant as purchasers, encumbrances, or otherwise, are forever foreclosed of all interest or claim in the Property except any statutory right of redemption that Defendants may have in the Property.

24.

DENIAL OF HOMESTEAD EXEMPTION: That Defendant(s) is/are not entitled to a homestead exemption as against Plaintiff's Deed of Trust.

///

///

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253(800)970-5647
Fax (360)260-2285
ksutherland@logs.com
10-COMPLAINT FOR DEED OF TRUST FORECLOSURE
S&S No: 19-124735

25.

<u>WAIVER OF DEFICIENCY / REDEMPTION PERIOD:</u> If any deficiency remains after application of the sales proceeds following the foreclosure sale, Plaintiff expressly waives a deficiency judgment and no deficiency judgment shall be entered against any defendant. Consequently, the period of redemption shall be eight (8) months from the date of the Sheriff's sale and the Sheriff shall be ordered to issue the Sheriff's deed at the termination of the eight (8) months period because the Property is not used principally for agricultural or farming purposes, the Plaintiff as judgment trust creditor expressly waives any right to a deficiency judgment, and the Plaintiff will have complied with RCW 6.23.030.

26.

<u>PLAINTIFF ALLOWED RIGHT TO BECOME BIDDER:</u> That Plaintiff be permitted to become a bidder and purchaser at the foreclosure sale and that the purchaser is entitled to immediate possession of the Property and, if the Property is not vacated, the Court, upon motion, should forthwith order the clerk of the court to issue a writ of assistance ordering the sheriff to deliver possession of the Property to the purchaser.

///

///

///

///

///

*SHAPIRO & SUTHERLAND, LLC*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
Telephone (360)260-2253(800)970-5647
Fax (360)260-2285
ksutherland@logs.com

11-COMPLAINT FOR DEED OF TRUST FORECLOSURE
S&S No: 19-124735

27.

OTHER RELIEF: For such other and further relief as the Court deems just and proper.

Dated this 25 day of April , 2019.

Attorneys for Plaintiff,
SHAPIRO & SUTHERLAND, LLC

By:
[ ] James A. Craft #47763 [jcraft@logs.com]*
[ ] Kelly D. Sutherland #21889 [ksutherland@logs.com]
[ ] Holger Uhl #52705 [huhl@logs.com]*
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683
(360)260-2253; Fax (360)260-2285

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  PLEASE BE ADVISED THAT IF YOUR PERSONAL LIABILITY FOR THIS DEBT HAS BEEN EXTINGUISHED BY A DISCHARGE IN BANKRUPTCY OR BY AN ORDER GRANTING IN REM RELIEF FROM STAY, THIS NOTICE IS PROVIDED SOLELY TO FORECLOSE THE MORTGAGE REMAINING ON YOUR PROPERTY AND IS NOT AN ATTEMPT TO COLLECT THE DISCHARGED PERSONAL OBLIGATION.**

12-COMPLAINT FOR DEED OF TRUST FORECLOSURE
S&S No: 19-124735

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| | | |
|---|---|---|
| **August 25th, 2006** | **TACOMA** | **WASHINGTON** |
| [Date] | [City] | [State] |

**1221 14TH AVENUE, FOX ISLAND, Washington 98333**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   **650,000.00**   (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
**FIRST HORIZON HOME LOAN CORPORATION**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   **7.625**   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on   **October 1st , 2006**   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   **September 1st, 2036**   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   **PO BOX 809**
  **MEMPHIS, TN 38101**
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $   **4,130.21**   . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -**
**Single Family - Fannie Mae UNIFORM INSTRUMENT**

Wolters Kluwer Financial Services
VMP®-838N (0210).01          Form 3520 1/01
Page 1 of 4                  Initials:

Exhibit 1- Page 1 of 7

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of   **September, 2011**                , and on that day every   **6th**   month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE-QUARTER**                          percentage points (     **2.250**          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than            **13.625**        % or less than    **2.250**         %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than   **TWO & 00/100**            percentage point(s) (     **2.00** |    %) from the rate of interest I have been paying for the preceding        **6**        months. My interest rate will never be greater than        **13.625**        %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Exhibit 1- Page 2 of 7

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be         5.00             % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
DEBORAH TOWNSEND                     -Borrower          SCOTT TOWNSEND                       -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                               -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                               -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                               -Borrower

*[Sign Original Only]*

Exhibit 1- Page 4 of 7

Pay to the order of

Without recourse
First Horizon Home Loan Corporation

by_____
B.J. Cooley, Vice President

Exhibit 1- Page 5 of 7

# INTEREST ONLY ADDENDUM
# TO ADJUSTABLE RATE NOTE

**THIS ADDENDUM** is made this 25th day of August                        , 2006, and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to **FIRST HORIZON HOME LOAN CORPORATION**
(the "Lender").

**THIS ADDENDUM** supercedes Section 3(A), 3(B), 4(C) and 7(A) of the Note. None of the other provisions of the Note are changed by this Addendum.

### 3.  PAYMENTS
#### (A)  Time and Place of Payments
   I will pay interest by making payments every month for the first    120    payments   (the   "Interest Only Period") in the amount sufficient to pay interest as it accrues.  I will pay principal and interest by making payments every month thereafter for the next   240   payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest Only Period over the remaining term of the Note in equal monthly payments.
   I will make my monthly payments on the first day of each month beginning on **October 1st,**   **2006**   .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal.  If, on   **September 1st, 2036**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".
   I will make my payments at **PO BOX 809, MEMPHIS, TN 38101**
      , or at a different place if required by the Note Holder.
#### (B)  Amount of My Initial Monthly Payments
   Each of my initial monthly payments will be in the amount of U.S. $   **4,130.21.**   This payment amount is based on the original principal balance of the Note.  This payment amount may change.

### 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (C)  Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE-QUARTER**   percentage points (**2.250%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.
   During this Interest Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest on the lower principal balance.  At the end of the Interest Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest Only Period, my payment amount will not be reduced due to voluntary prepayments.

Exhibit 1- Page 6 of 7

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   **15** calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be   **5.00**   % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum.

_Deborah Townsend 9/1/06_
DEBORAH TOWNSEND                Date

_____
SCOTT TOWNSEND                       Date

_____              _____
Date                                                        Date

_____              _____
Date                                                        Date

_____              _____
Date                                                        Date

Interest Only Addendum to Note                Page 2 of 2

Exhibit 1- Page 7 of 7

SEP -- 2006

CHICAGO TITLE



200609060376          20   PGS
09/06/2006 1:03pm $52.00
PIERCE COUNTY, WASHINGTON

Return To:
FHHLC - POST CLOSING MAIL ROOM

1555 W WALNUT HILL LN #200 MC 6712
IRVING, TX 75038

Assessor's Parcel or Account Number: County: 02-20-07-8-005 & 02-20-078-006 AOP City:
Abbreviated Legal Description: A PTN OF LOTS 1 AND 2,
PIERCE COUNTY SHORT PLAT NUMBER 200005195001

[Include lot, block and plat or section, township and range]          Full legal description located on page   3

Trustee: CHICAGO TITLE INSURANCE COMPANY
          4717 SOUTH 19TH                     Additional Grantees located on page   N/A
          TACOMA, WA 98405      [Space Above This Line For Recording Data]

## DEED OF TRUST
MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.
**(A) "Security Instrument"** means this document, which is dated   **August 25th, 2006**
together with all Riders to this document.
**(B) "Borrower"** is
**DEBORAH TOWNSEND &**
**SCOTT TOWNSEND, Wife & Husband**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
**FIRST HORIZON HOME LOAN CORPORATION**

**WASHINGTON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

VMP-6A(WA) (0012)      Form 3048 1/01
Page 1 of 15             Initials:
VMP MORTGAGE FORMS - (800)521-7291

Exhibit 2- Page 1 of 20

Lender is a **CORPORATION**
organized and existing under the laws of **THE STATE OF KANSAS**
Lender's address is **4000 Horizon Way, Irving, Texas 75063**

(D) "Trustee" is **CHICAGO TITLE INSURANCE COMPANY**
                    **4717 SOUTH 19TH, TACOMA, WA 98405**
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated  **August 25th, 2006**
The Note states that Borrower owes Lender
  **SIX HUNDRED FIFTY THOUSAND & 00/100**                                        Dollars
(U.S. $          **650,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  **SEPTEMBER 1, 2036**                 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____



-6A(WA) (0012)                    Page 2 of 15                                    Form 3048 1/01

Exhibit 2- Page 2 of 20

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          County          of          Pierce
                    [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

All that tract or parcel of land as shown on Schedule "A" attached hereto which is incorporated herein and made a part hereof.

Parcel ID Number:  County: 02-20-07-8-005 ~~& 02-20-078-000~~ which currently has the address of
1221 14TH AVENUE                                                                                [Street]
FOX ISLAND                              [City] , Washington    98333    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials:

-6A(WA) (0012)                    Page 3 of 15                    Form 3048  1/01

Exhibit 2- Page 3 of 20

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any

Initials: _____

time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _____

-6A(WA) (0012)                    Page 5 of 15                    Form 3048   1/01

Exhibit 2- Page 5 of 20

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to

Initials: _DT_ _JM_

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Exhibit 2- Page 7 of 20

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

Exhibit 2- Page 8 of 20

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Initials

Exhibit 2- Page 9 of 20

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless

-6A(WA) (0012)                           Page 10 of 15                           Form 3048 1/01

Initials:

Exhibit 2- Page 10 of 20

Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.

There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check

Initials

-6A(WA) (0012)                    Page 11 of 15                    Form 3048  1/01

Exhibit 2- Page 11 of 20

or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

Initials: _____

Exhibit 2- Page 12 of 20

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

Exhibit 2- Page 13 of 20

25. **Use of Property.** The Property is not used principally for agricultural purposes.

26. **Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____        _____ (Seal)
                                        DEBORAH TOWNSEND            -Borrower

_____        _____ (Seal)
                                        SCOTT TOWNSEND             -Borrower

_____ (Seal)            _____ (Seal)
              -Borrower                               -Borrower

_____ (Seal)            _____ (Seal)
              -Borrower                               -Borrower

_____ (Seal)            _____ (Seal)
              -Borrower                               -Borrower


®-6A(WA) (0012)                    Page 14 of 15                    Form 3048  1/01

Exhibit 2- Page 14 of 20

STATE OF WASHINGTON                                      } ss:
County of      PIERCE

    On this day personally appeared before me

**DEBORAH TOWNSEND & SCOTT TOWNSEND**

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

    GIVEN under my hand and official seal this _1st_ day of _Sept. 2006_

```
BARBARA M. SIMMONS
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
JANUARY 5, 2008
```

_Barbara M Simmons_

Notary Public in and for the State of Washington, residing at

_Olympia_

My Appointment Expires on _1-5-08_

Exhibit 2- Page 15 of 20

EXHIBIT "A"

## LEGAL DESCRIPTION EXHIBIT

BEGINNING AT THE NORTHWEST CORNER OF LOT 1, PIERCE COUNTY SHORT PLAT
NUMBER 200005195001, ACCORDING TO THE PLAT THEREOF RECORDED MAY 19, 2000,
RECORDS OF PIERCE COUNTY AUDITOR.
THENCE SOUTH 89°32'34" EAST 513.86 FEET;
THENCE SOUTH 00°51'39" WEST 149.23 FEET;
THENCE NORTH 87°47'16" EAST 239.06 FEET;
THENCE SOUTH 80°26'07" EAST 387.61 FEET;
THENCE SOUTH 82°55'58" EAST 201.36 FEET TO THE EAST LINE OF SAID SHORT
PLAT;
THENCE SOUTH ALONG THE EAST LINE OF SAID SHORT PLAT 02°25'22" WEST 107.43
FEET;
THENCE NORTH 89°32'34" WEST 1333.00 FEET TO THE WEST LINE OF SAID SHORT
PLAT;
THENCE NORTH ALONG THE WEST LINE OF SAID SHORT PLAT 00°51'39" EAST 330.00
FEET TO THE POINT OF BEGINNING.

EXCEPT ANY PORTION THEREOF LYING WITHIN 14TH AVENUE.

TOGETHER WITH SECOND CLASS TIDELANDS ABUTTING THEREON.

SITUATE IN THE COUNTY OF PIERCE, STATE OF WASHINGTON.

Exhibit 2- Page 16 of 20

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In** *The Wall Street Journal*) **- Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this   **25th** day of **August, 2006**
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
**FIRST HORIZON HOME LOAN CORPORATION**

("Lender") of the same date and covering the property described in the Security Instrument
and located at:
**1221 14TH AVENUE**
**FOX ISLAND, WA 98333**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of       **7.625**   %. The Note provides
for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of     **September, 2011**
and on that day every       **6th**        month thereafter. Each date on which my interest
rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for six month U.S. dollar-denominated
deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most
recent Index figure available as of the first business day of the month immediately
preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is
based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by
adding  **TWO AND ONE-QUARTER**                                percentage points
(       **2.250**   %) to the Current Index. The Note Holder will then round the result of

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED
IN THE WALL STREET JOURNAL)** - Single Family - Fannie Mae Uniform Instrument
VMP-838R (0402)  **Form 3138 1/01**
Page 1 of 3       Initials
VMP Mortgage Solutions, Inc.
(800)521-7291

Exhibit 2- Page 17 of 20

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.625 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO & 00/100 percentage points ( 2.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.625 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

VMP®-838R (0402)                          Page 2 of 3                          Initials: _____

Form 3138 1/01

Exhibit 2- Page 18 of 20

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
DEBORAH TOWNSEND                -Borrower

_____ (Seal)
SCOTT TOWNSEND                  -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

VMP-838R (0402)                Page 3 of 3                Form 3138 1/01

Exhibit 2- Page 19 of 20

# INTEREST ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

**THIS ADDENDUM** is made this 25th day of **August** , 2006 , and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to **FIRST HORIZON HOME LOAN CORPORATION**

(the "Lender").

**THIS ADDENDUM** supercedes Section 4(C) of the Rider. None of the other provisions of the Rider are changed by this Addendum.

### 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE-QUARTER** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During this Interest Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest on the lower principal balance. At the end of the Interest Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest Only Period, my payment amount will not be reduced due to voluntary prepayments.

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum.**

_Deborah Townsend_   9/1/06
DEBORAH TOWNSEND                 Date

_Scott Townsend_   9-1-06
SCOTT TOWNSEND                   Date

_____          _____
Date                             Date

_____          _____
Date                             Date

_____          _____
Date                             Date

Interest Only Addendum to ARM Rider        Page 1 of 1

Exhibit 2- Page 20 of 20